EDWARD STEPHEN HARKNESS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD STEPHEN HARKNESS, EXECUTOR, ESTATE OF ANNA M. HARKNESS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 30472, 30473. Promulgated January 7, 1931.

*Harrison Tweed, Esq.,* and *John E. Lockwood, Esq.,* for the petitioners.

*R. W. Wilson, Esq.,* for the respondent.

MURDOCK: For the year 1923 the Commissioner determined a deficiency in income-tax liability of $130,736.46 as to Edward Stephen Harkness (Docket No. 30472), and a deficiency of $150,934.63 in the case of the estate of Anna M. Harkness (Docket No. 30473). The cases were duly consolidated. The petitioners have assigned as error the action of the Commissioner (1) in computing the profit upon the sale of certain stock subscription rights, and (2) in determining the credit of 25 per centum provided in subdivisions (a) and (f) of section 1200 of the Revenue Act of 1924 by computing the amount of this credit after the allowance of the credit for income taxes paid to Great Britain. The petitioner Edward Stephen Harkness in Docket No. 30472 also assigned as error the failure of the Commissioner to compute the profit on the sale of the aforesaid stock subscription rights in accordance with the provisions of section 206(b) of the Revenue Act of 1921. The respondent has confessed error as to this last assignment.

In each case the parties have filed a paper entitled "Agreed Statement of Facts." This agreed statement of facts is not set forth in full here because, in our opinion, a large part of the statement is unnecessary to a decision of the case, in view of certain conclusions which are thereafter set forth in that statement.

Edward Stephen Harkness is an individual and is also executor of the estate of Anna M. Harkness, who died on March 27, 1926. In each capacity he is a petitioner herein. In various ways, including the declaration of stock dividends, Edward Stephen Harkness acquired common stock of the Standard Oil Co. of California, hereinafter called the Standard Oil Co. He was the owner and record holder of 241,680 of these shares on March 26, 1923. As we understand from their statement, the parties have agreed that 90,264 of these shares were derived from and are directly traceable and attributable to certain shares owned by him on March 1, 1913, and these 90,264 shares represent a continuing interest in the corporation which on March 1, 1913, had a value of $1,054,283.52. In other words, the March 1, 1913, value of the interest which persisted fundamentally unchanged from that date until March 26, 1923, when it was evidenced by 90,264 shares, was $1,054,283.52. The March 1, 1913, value of this interest was greater than cost. The remaining 151,416 shares are attributable to and derived from shares purchased after March 1, 1913, at a total cost of $3,615,789.49. Thus, the basis for gain resulting from the disposition of these shares was the sum of $1,054,283.52 and $3,615,789.49, or $4,670,073.01.

In March, 1923, the Standard Oil Co., by appropriate action, gave to each stockholder of record on March 26, 1923, the right to sub-

scribe at $25 per share for additional shares of stock in the proportion of one share for every eight shares held. Thus, the petitioner acquired 241,680 rights. The owner of these rights could subscribe for 30,210 shares of stock at $25 per share. The petitioner sold 127,760 of these rights during the year 1923 for $410,153.61, or for an average price per right of $3.21+. March 14, 1923, was the first day on which the shares of stock and the rights were sold separately on the New York Stock Exchange. On that day the market price of a share of Standard Oil stock was 62⅝ dollars and the market price of a right to subscribe to ⅛ of a share of stock was 4¼ dollars.

The Commissioner computed a profit to the petitioner from the sale of these rights in excess of the full amount realized from such sale, but in computing the deficiency he used only the actual amount realized from the sale of these rights as the profit. He computed the profit in accordance with Regulations 62, article 39 (as amended by Treasury Decision 3403) and Treasury Decision 4018.

The petitioner suffered losses of $334,870 in 1923 from the sale of securities.

The Government of Great Britain assessed and collected an income tax of $28,677.07 during the year 1923 on dividends paid to Edward Stephen Harkness by the Anglo-American Oil Co.

Anna M. Harkness was the owner and record holder of 173,312 shares of the stock of the Standard Oil Co. on March 26, 1923. As we understand from their statement, the parties have agreed that 152,640 of these shares were derived from and are directly traceable and attributable to certain shares owned by her on March 1, 1913, and these 152,640 shares represent a continuing interest in the corporation which on March 1, 1913, had a value of $1,783,980. In other words, the March 1, 1913, value of the interest which persisted fundamentally unchanged from that date until March 26, 1923, when it was evidenced by 152,640 shares, was $1,783,980. The March 1, 1913, value of this interest was greater than cost. The remaining 20,672 shares are attributable to and derived from shares purchased after March 1, 1913, at a total cost of $129,617.06. Thus, the basis for gain resulting from the disposition of these shares was the sum of $1,783,980 and $129,617.06, or $1,913,597.06.

The Standard Oil Co. gave the petitioner, as a stockholder of record on March 26, 1923, 173,312 rights. The holder of these rights was entitled to subscribe for 21,664 shares of stock at $25 per share. Anna M. Harkness sold 125,310 of these rights during 1923 for $402,492.35, or for an average price of $3.21+ per right. The Commissioner computed the profit of Anna M. Harkness and determined the deficiency with respect thereto in the same way as he did in the case of Edward Stephen Harkness.

The Government of Great Britain assessed and collected an income tax of $26,601.75 on dividends paid to Anna M. Harkness by the Anglo-American Oil Co.

The Supreme Court of the United States, in *Miles* v. *Safe Deposit & Trust Co.*, 259 U. S. 247, said in regard to stock subscription rights:

The right to subscribe to the new stock was but a right to participate, in preference to strangers and on equal terms with other existing stockholders, in the privilege of contributing new capital called for by the corporation—an equity that inheres in stock ownership under such circumstances as a quality inseparable from the capital interest represented by the old stock, recognized so universally as to have become axiomatic in American corporation law. [Cases cited]. Evidently this inherent equity was recognized in the statute and the resolution under which the new stock here in question was offered and issued.

The stockholder's right to take his part of the new shares therefore—assuming their intrinsic value to have exceeded the issuing price—was essentially analogous to a stock dividend. So far as the issuing price was concerned, payment of this was a condition precedent to participation, coupled with an opportunity to increase his capital investment. In either aspect, or both, the subscription right of itself constituted no gain, profit or income taxable without apportionment under the Sixteenth Amendment. *Eisner* v. *Macomber*, 252 U. S. 189, is conclusive to this effect.

But in that case it was recognized that a gain through sale of dividend stock at a profit was taxable as income, the same as a gain derived through sale of some of the original shares would be. In that as in other recent cases this Court has interpreted " income " as including gains and profits derived through sale or conversion of capital assets, * * *.

Hence the District Court rightly held defendant in error liable to income tax as to so much of the proceeds of sale of the subscription rights as represented a realized profit over and above the cost to it of what was sold. * * *. To treat the stockholder's right to the new shares as something new and independent of the old, and as if it actually cost nothing, leaving the entire proceeds of sale as gain, would ignore the essence of the matter, and the suggestion can not be accepted. The District Court proceeded correctly in treating the subscription rights as an increase inseparable from the old shares, not in the way of income but as capital; in treating the new shares if and when issued as indistinguishable legally and in the market sense from the old; and in regarding the sale of the rights as a sale of a portion of a capital interest that included the old shares. * * *

This decision of the Supreme Court does not prescribe in detail the method of computing gain from the sale of stock rights, but the decision did affirm the decision of the District Court. The method used by the District Court in that case arrived at a satisfactory result for that case, but a proper result in the present case can not be reached by applying the method used by the District Court in the *Miles* case. The respondent, by blindly adhering to a formula, has computed a profit in each of these cases in excess of the actual sale price of the rights. Such a result is manifestly wrong and in conflict with the decision of the Supreme Court above referred

to. The deficiency determined by using, as a profit from the sale of these rights, the entire amount of the purchase price is in error. That which is not income is taxed as if it were.

By the issuance of the stock rights the corporation carved something out of the interest which theretofore was represented by each share of stock. The thing carved out was called a right, and the question is, what portion of the old share was carved out in the right. If this be known, then the cost or basis applicable to the old share can be divided accordingly between a share after the rights have been separated and the right. When either is sold, the amount of gain can be separately computed. However, it is difficult to determine exactly the proportion of the basis for gain or loss of the old share which should be assigned to the right and that which should be assigned to a share after the rights have been separated. The Commissioner later provided by regulations (Regulations 69, article 39, and Regulations 74, article 58) that this allocation should be made in proportion to the respective values of the rights and the shares exclusive of the rights at the time the rights were issued, but he refused to apply this method in the present case because he says such an application would be a retroactive one, and he has decided that these regulations should not be applied retroactively. He insists upon applying a method provided in his old regulation, as modified by a Treasury Decision, which in this case would allocate to the rights no part of the old share basis. This old modified regulation has nothing to recommend it for use in this case. It never would have reached the proper result in a case such as this, and for current years its use has been abandoned by the Commissioner and he has adopted, for making similar allocations, a new method which, the petitioner concedes, is convenient, practical and fair. No better method has been suggested. We hold that the profit in each of these cases should be computed by apportioning to the rights that part of the total basis applicable to the old shares which bears the same ratio to the total basis as the market price of the rights on March 14, 1923, bears to the total market price of the rights on that day plus the market price of the stock after the rights had been separated.

On the question of the credit provided by section 1200 of the Revenue Act of 1924, our judgment is for the respondent. *John Moir et al.*, 3 B. T. A. 21; *David A. Cunningham*, 9 B. T. A. 1050; *Stover* v. *McCaughn*, 28 Fed. (2d) 1005.

*Judgment will be entered under Rule 50.*