BARNETT ANCHOR OIL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30994.   Promulgated February 29, 1932.

*Melvin D. Wilson, Esq.,* and *Joseph D. Peeler, Esq.,* for the petitioner.

*Arthur Carnduff, Esq.,* for the respondent.

748

751

OPINION.

MATTHEWS: The petitioner concedes that the respondent's allowance for depletion on the oil lease in the amount of $209,243.73 for 1923, computed on the basis of its fair market value at the time acquired, as far as income for that year is concerned, is correct. In view of the fact that such computation is in accordance with the statute, we affirm the respondent's determination of the deficiency for that year. We then have to decide the correct amount of depletion deductible from income for 1924 and 1925 and the amount of profit sustained on the sale of the petitioner's 70 per cent interest in the

lease in 1925. The resolution of both these questions hinges on the ultimate question of the basis to be employed in each instance.

As to the amount of depletion deductible from income for the year 1924, the Revenue Act of 1924 provides as follows:

SEC. 234. (a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

* * * * * * *

(8) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee.

SEC. 204. (c) The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale, or other disposition of such property, * * *

SEC. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

* * * * * * *

(7) If the property (other than stock or securities in a corporation a party to the reorganization) was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss, recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made;

(8) If the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money in addition to such stock or securities), then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

* * * * * * *

SEC. 203. (b) (4) No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

In view of these provisions of the Act, we must determine whether the property in question was acquired under the provisions of section 204 (a) (7) or (8).

It should be noted in this proceeding that the individuals who had acquired the lease exchanged their *interests* in the lease for stock of the petitioner; that they at all times held title to these interests; that they received stock in proportion to their interests, and that after the exchange they controlled more than 80 per cent of the stock of the petitioner.

The petitioner immediately took over the interests in the lease and, according to the stipulation, " dissolved " the association. As we view it the net result of these transfers was that petitioner corporation exchanged its stock for the interests in the lease and that the same individuals who at all times owned these interests, and who also owned all the interests in the association, owned, after the transfer, over 80 per cent of the stock of the petitioner corporation. The transfer was not one of stock for stock, but a transfer by individuals of property for stock. In other words, the property was " acquired by a corporation by the issuance of stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203," and is, therefore, governed by the provisions of section 204 (a) (8) of the Revenue Act of 1924.

The petitioner contends, however, that it did not acquire property for stock, but that it acquired stock of the association or interests in the association for its stock; that it later caused the association to be dissolved, at which time it realized a profit or sustained a loss; and that the fair market value of the assets received from the association upon its dissolution is the basis to be used in determining later profit or loss. The petitioner lays a great deal of stress on its contention that the dissolution of the association is not a step in a reorganization.

It may indeed be questioned whether in any event an association could be a party to a reorganization within the meaning of the statute. However, we do not believe it is necessary to pass on this question. Counsel for the petitioner in his brief states that the petitioner exchanged stock for stock in the association, but there is no evidence of this. Neither is there any evidence submitted as to the nature of the association or that it even issued stock or certificates of interest therein. The lease was operated as an association by a committee acting for the owners from September 31, 1922, to January 8, 1923, but the individual owners retained title at all times to their interests in the lease. The stipulation states that the petitioner caused the association to be " dissolved." We have no knowledge that any formal steps were taken to effect this dissolution. The pe-

titioner had already acquired the interests in the lease from individuals under the provisions of section 204 (a) (8).

We are, therefore, of the opinion that the basis for determining the depletion deduction allowable for 1924 is the same as it would be in the hands of the transferors, the individuals who transferred their interests in the lease for stock of the petitioner, and that this basis should be "increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made."

The transfer of these assets to the petitioner took place in 1923, at which time the Revenue Act of 1921 was in effect, section 202 (c) (3) of which provides as follows:

SEC. 202. (c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized.—

\*  \*  \*  \*  \*  \*  \*

(3) When (A) a person transfers any property, real, personal or mixed, to a corporation, and immediately after the transfer is in control of such corporation, or (B) two or more persons transfer any such property to a corporation, and immediately after the transfer are in control of such corporation, and the amounts of stock, securities, or both, received by such persons are in substantially the same proportion as their interests in the property before such transfer. For the purposes of this paragraph, a person is, or two or more persons are, "in control" of a corporation when owning at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

Since it is clear that under section 202 (c) (3) of the Revenue Act of 1921 no gain was recognized by the transferors upon the transfer in 1923, the basis for determining depletion for 1924 is the cost to such transferors. The parties have stipulated that the amount of depletion for 1924 computed upon such basis is $53,093.28.

With regard to the amount of depletion deductible from income for 1925, the Revenue Act of 1926 provides:

SEC. 204. (c) The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property, except that—

\*  \*  \*  \*  \*  \*  \*

(2) In the case of oil and gas wells the allowance for depletion shall be 27½ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph.

The parties have agreed that the amount computed in accordance with this section is $35,952.33. This amount is greater than the

depletion allowance would be if computed without reference to this paragraph and such is the amount which the petitioner is entitled to deduct from its gross income for that year.

With regard to the basis for determining the profit from the sale in 1925, section 202 (a) (b) (2) of the Revenue Act of 1926 provides:

SEC. 202. (a) Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivision (a) or (b) of section 204, and the loss shall be the excess of such basis over the amount realized.

(b) In computing the amount of gain or loss under subdivision (a)—

\*      \*      \*      \*      \*      \*      \*

(2) The basis shall be diminished by the amount of the deductions for exhaustion, wear and tear, obsolescence, amortization, and depletion which have since the acquisition of the property been allowable in respect of such property under this Act or prior income tax laws; but in no case shall the amount of the diminution in respect of depletion exceed a depletion deduction computed without reference \* \* \* to paragraph (2) of subdivision (c) of section 204. \* \* \*

Section 204 (a) (7) and (8) of the Revenue Act of 1926 is identical with the same section of the Revenue Act of 1924, above quoted. Since we have already determined that the property was acquired by the petitioner for stock from individuals within the meaning of section 204 (a) (8), it is clear that in computing the profit from the sale the cost to the individual transferors (plus subsequent capital expenditures made by petitioner) should be used as the basis.

We are of the opinion that the provisions of section 202 (b) (2) mean that in determining profit or loss from a sale the basis shall be reduced by the aggregate deductions for depletion which the taxpayer was entitled to deduct from its gross income for each year in which the property had been owned by the taxpayer, computed under the law governing the determination of income for that specific year, except that the diminution for depletion for the years in which the 1926 Act was in force shall not exceed a depletion deduction computed without reference to paragraph (2) of subdivision (c) of section 204. Section 202 (b) (2) of the 1924 Act provides that in computing gain or loss on a sale, adjustment shall be made for any item of depletion " previously allowed with respect to such property."

Although prior revenue acts contained no provisions corresponding to section 202 (b) (2) of the 1924 and 1926 Acts, the Supreme Court, in *United States* v. *Ludey*, 274 U. S. 295, held that in computing the gain or loss under the 1917 Act the basis should be adjusted by the aggregate of the amounts of depletion which a taxpayer had been entitled to deduct from gross income. The court said:

We are of opinion that the revenue acts should be construed as requiring deductions for both depreciation and depletion when determining the original

cost of oil properties sold. Congress, in providing that the basis for determining gain or loss should be the cost or the 1913 value, was not attempting to provide an exclusive formula for the computation. The depreciation charge permitted as a deduction from the gross income in determining the taxable income of a business for any year represents the reduction, during the year, of the capital assets through wear and tear of the plant used. The amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost. The theory underlying this allowance for depreciation is that by using up the plant, a gradual sale is made of it. The depreciation charged is the measure of the cost of the part which has been sold. When the plant is disposed of after years of use, the thing then sold is not the whole thing originally acquired. The amount of the depreciation must be deducted from the original cost of the whole in order to determine the cost of that disposed of in the final sale of properties. Any other construction would permit a double deduction for the loss of the same capital assets.

\*    \*    •    •    \*    •    •

The Court of Claims erred in holding that no deduction should be made from the original cost on account of depreciation and depletion; but it does not follow that the amount deducted by the Commissioner was the correct one. The aggregate for depreciation and depletion claimed by Ludey in the income tax returns for the years 1913, 1914, 1915 and 1916, and allowed, was only $5,156. He insists that more cannot be deducted from the original cost in making the return for 1917. The contention is unsound. The amount of the gain on the sale is not dependent on the amount claimed in earlier years. If in any year he has failed to claim, or has been denied, the amount to which he was entitled, rectification of the error must be sought through a review of the action of the Bureau for that year. He cannot choose the year in which he will take a reduction. On the other hand, we cannot accept the Government's contention that the full amount of depreciation and depletion sustained, whether allowable by law as a deduction from gross income in past years or not, must be deducted from cost in ascertaining gain or loss. Congress doubtless intended that the deduction to be made from the original cost should be the aggregate amount which the taxpayer was entitled to deduct in the several years.

The findings do not enable us to determine what that aggregate is. The sale included several properties purchased at different times. The deduction allowable in the several years for each of the properties is not found. Under the Act of 1913 the full amount of the depletion was not necessarily deductible. In order that the amount of the gain in 1917 may be determined in the light of such facts, the case is remanded for further proceedings in accordance with this opinion.

In the case of *J. M. Loffland*, 10 B. T. A. 14, we held that for the purpose of determining gain or loss upon a sale in 1920 the amount of depreciation for the years 1913, 1914 and 1915 should be determined under the provisions of the Revenue Act of 1913, which were to the effect that individuals in computing net income were limited in their deductions for exhaustion, etc., in the case of mines, to 5

per cent of the gross value at the mines of the output for the taxable year.

We have already determined that the petitioner is entitled to deduct from gross income as depletion the following amounts: For 1923, $209,243.73; for 1924, $53,093.28; for 1925, $35,952.23. Obviously the provision in section 202 (b)(2), that the amount of diminution in respect of depletion shall not exceed a depletion deduction computed without reference to paragraph (2) of subdivision (c) of section 204, applies only to the years governed by the 1926 Act, since section 204 (c)(2) is only applicable to the determination of the depletion deduction for such years. The parties have stipulated that for 1925 the amount of depletion computed without reference to section 204 (c)(2) is $25,658.79, which is less than the depletion deduction computed under that section. It follows, therefore, that in determining the profit from the sale the cost basis should be reduced by the sum of the depletion allowable from gross income for 1923 and 1924, as set forth above, and $25,658.79.

One question remains, petitioner's contention that the applicable provisions of the Revenue Acts of 1924 and 1926, which fix cost in the transferor's hands, and not realizable market value at date of exchange, as the basis for depletion and for gain or loss on subsequent sale, are unconstitutional in that they deprive it of property without due process of law. This argument has already been answered. *T. W. Phillips, Jr., Inc.*, 23 B. T. A. 1271; *Osburn California Corporation* v. *Welch*, 39 Fed. (2d) 41; certiorari denied, 282 U. S. 850; *Newman, Sanders & Co.* v. *United States*, 36 Fed. (2d) 1009; certiorari denied, 281 U. S. 760; Cf. *Haas Building Co.*, 22 B. T. A. 528. Section 204 (a)(8) of the Revenue Act of 1924 and its corresponding section in the 1926 Act are not unconstitutional.

*Judgment will be entered under Rule 50.*