*Decision will be entered under Rule 50.*

BERTHA G. BAMBERGER, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 62578–62595.   Promulgated February 23, 1933.

---

[1] Proceedings of the following petitioners are consolidated herewith: Bertha G. Bamberger; Eleanor F. Bamberger, Trustee for John E. Bamberger; Gloria Bamberger; Clarence Bamberger, Trustee for Joan Marie Bamberger; Clarence Bamberger and Richard W. Dooly, Trustees for John E. Bamberger; Joan Marie Bamberger; Clarence Bamberger, Trustee for John E. Bamberger; Clarence Bamberger, Trustee for Gloria

*Charles M. Morris, Esq.*, and *Edward R. Callister, Esq.*, for the petitioners.

*R. W. Wilson, Esq.*, for the respondent.

Bamberger; Clarence Bamberger, Trustee for Clarence Bamberger, Jr.; Ernest Bamberger; Maria Odell Bamberger; Clarence Bamberger, Trustee for Eleanor F. Bamberger; Bertha G. Bamberger, Trustee for Dorothy B. Allen; Clarence Bamberger; Bertha G. Bamberger, Ernest Bamberger and Clarence Bamberger, Executors of the Last Will and Testament (Estate) of J. E. Bamberger, Deceased; Ernest Bamberger, Trustee for J. J. Bamberger; Ernest Bamberger, Trustee for Dorothy B. Allen; Ernest Bamberger.

OPINION.

BLACK: It is conceded by both parties that the transactions occurring in June 1929, by which three subsidiary corporations were organized and to which Bamberger Investment and Exploration Company transferred much of its valuable stocks and securities,

receiving in consideration therefor all the capital stock of the subsidiary corporations and in turn distributing said shares of stock to its own stockholders as a part of the plans of reorganization, were nontaxable transactions under the provisions of the Revenue Act of 1928.

The stock of these three subsidiary corporations which was distributed to the stockholders of Bamberger Investment and Exploration Company without their having to surrender any of their stock in the parent corporation, comes within the description of section 112 (g) of the Revenue Act of 1928, which reads as follows:

(g) *Distribution of stock on reorganization.* If there is distributed, in pursuance of a plan of reorganization, to a shareholder in a corporation a party to the reorganization, stock or securities in such corporation or in another corporation a party to the reorganization, without the surrender by such shareholder of stock or securities in such a corporation, no gain to the distributee from the receipt of such stock or securities shall be recognized.

It is likewise conceded by both parties that when, on July 16, 1929, two of the three subsidiary corporations completely liquidated and distributed their assets and surplus to the stockholders, which consisted entirely of stocks and securities of other corporations, this was a taxable transaction and the basis for gain or loss is to be determined under section 113 (a) (9) of the Revenue Act of 1928, which reads as follows:

(9) Tax-free distribution. If the property consists of stock or securities distributed after December 31, 1923, to a taxpayer in connection with a transaction described in section 112 (g), the basis in the case of the stock in respect of which the distribution was made shall be apportioned, *under rules and regulations prescribed by the Commissioner with the approval of the Secretary,* between such stock and the stock or securities distributed. [Italics supplied.]

In pursuance of the foregoing statute, the Commissioner promulgated article 600 of Regulations 74, providing for the apportionment of the costs of stock, which regulations, as first promulgated, read in part as follows:

(1) Where the stock distributed in reorganization is all of substantially the same character or preference as the stock in respect of which the distribution is made, the basis of each share will be the quotient of the cost or other basis of the old shares of stock divided by the total number of the old and new shares.

(2) Where the stock distributed in reorganization is in whole or in part of a character or preference materially different from the stock in respect of which the distribution is made, the cost or other basis of the old shares of stock shall be divided between such old stock and the new stock in proportion, as nearly as may be, to the respective values of each class of stock, old and new, at the time the new shares are distributed, and the basis of each share of stock will be the quotient of the cost or other basis of the class with which such share belongs, divided by the number of shares in the class. * * *

This regulation was in full force and effect at the time the petitioners received their distribution of shares in the three subsidiary corporations from the parent corporation in June 1929, and at the time in July 1929, when two of the subsidiary corporations were completely liquidated and their assets distributed to petitioners.

This regulation was subsequently amended, to wit, on November 13, 1929, in important respects, by the Commissioner with the approval of the Secretary. This amended regulation is contained in T. D. 4274, C. B. VIII–2, p. 240, and reads in part as follows:

(1) Where the stock distributed in reorganization consists *solely of stock in the distributing corporation* and is all of substantially the same character and preference as the stock in respect of which the distribution is made, the basis of each share will be the quotient of the cost or other basis of the old shares of stock divided by the total number of the old and new shares.

(2) Where the stock distributed in reorganization is in whole or in part stock in a corporation a party to the reorganization *other than the distributing corporation,* or where the stock distributed in reorganization is in whole or in part stock of a character or preference materially different from the stock in respect of which the distribution is made, or where the distribution consists wholly or partly of securities other than stock, the cost or other basis of the stock in respect of which the distribution is made shall be apportioned between such stock and the stock or securities distributed in proportion, as nearly as may be, to the respective values of each class of stock or security, old and new, at the time of such distribution, and the basis of each share of stock or unit of security will be the quotient of the cost or other basis of the class of stock or security with which such share or unit belongs, divided by the number of shares or units in the class. Within the meaning of the foregoing provision, securities are different in class from stocks, stocks or securities in one corporation are different in class from stocks or securities in another corporation, and, in general, any material difference in character or preference or terms sufficient to distinguish one stock or security from another stock or security so that different values may properly be assigned thereto, will constitute a difference in class. [Italics supplied.]

This same treasury decision also sets forth similar amended articles 1599 of Regulations 65 and 69. Regulations 65 and 69 were applicable to the years 1924 to 1927, inclusive, and all reorganizations to which these articles apply were necessarily consummated during the years mentioned and prior to the date of amendment. That the amended articles mentioned above were all to be applied retroactively, to the years covered by Regulations 65, 69 and 74, is clearly set forth in General Counsel's Memorandum 8751, which may be found in C. B. X–1, pp. 219 to 221. The principal changes made by the amended regulations are shown by the language set forth above in italics.

From an examination of paragraph (1) of article 600 as amended, quoted above, it will be seen that the method of apportioning on the basis of the quotient which is obtained by dividing the total cost

of the original shares by the total number of the old and new shares, is restricted *solely* to stock of the distributing corporation. Paragraph (2) of the above quoted amended regulations provides that the method of apportioning as to all other distributions of stock shall be on the basis, as nearly as may be, of the respective values of each class of stock or security, old and new, at the time of such distribution. This is entirely different from article 600 as originally promulgated. Paragraph (1) thereof was not restricted *solely* to stock of the distributing corporation, but included *all* stock received in distribution which was of *substantially the same character and preference* as the stock in respect of which the distribution was made. Paragraph (2) of article 600, as originally promulgated, was limited in its application to stock which had been received in distribution which was in whole or in part of a character or preference materially different from the stock in respect of which the distribution is made.

In the instant case the stock in the three subsidiaries which petitioners received as a part of the plan of reorganization was all common stock, just as all the stock which they owned in the parent corporation was common stock. The authorized capital stock of each of the three subsidiaries was the same as that of the parent corporation, to wit, $300,000. The common stock of two of the subsidiary corporations, viz., the National Exploration Company and Continental Exploration Company, was of the same par value ($10 per share) as that of the parent corporation and each of these two corporations was capitalized for the same number of shares as the parent corporation, viz., 30,000 shares of common stock.

The other subsidiary corporation, American Venture Corporation, had its capital stock divided into 3,000,000 shares of common stock of a par value of 10 cents per share. While the capital stock of this particular subsidiary was divided into a far larger number of shares, each of a far less par value than the capital stock of the parent corporation, still we think it was stock of substantially the same character or preference as the stock of the parent corporation and would therefore seem to fit into the definition of paragraph (1) of article 600 as first promulgated. Thus it would seem that the common stock of all three of the subsidiaries distributed in reorganization is of substantially the same character or preference as the common stock in respect of which the distribution was made (the stock of the Bamberger Investment and Exploration Company) and would apparently fit into the method of apportionment prescribed by paragraph (1) of article 600, as originally promulgated.

This method petitioners have followed in their computation of the tax as shown by their returns filed for the taxable year. Did respondent have the right to change the method of apportionment

used by petitioner and make applicable his amended regulations promulgated several months after the happening of the events which are the subject of the tax, though within the same year that the events occurred?

Petitioners contend that respondent had no such right, giving as reasons for their contention the following points:

I. Reorganization and complete liquidation here involved constitute a single transaction.

II. Article 600, Regulations 74, Income Tax Revenue Act of 1928, is not interpretative but has force and effect of law.

III. Said Article 600, said Regulations 74, as amended November 13, 1929, does not clarify the original Article but changes entirely the basis of cost of shares in corporations, parties to a reorganization.

IV. No intention declared in Article 600, Regulations 74, as amended November 13, 1929, that it should be applied retroactively.

V. Application of said Article 600, said Regulations 74, as amended, retroactively would be unjust, arbitrary, confiscatory and violative of Fifth Amendment to Federal Constitution.

Among other cases urged by petitioners in support of their contentions is *Untermeyer* v. *Anderson*, 276 U. S. 440. For reasons which we will now undertake to state, we do not think that *Untermeyer* v. *Anderson*, *supra*, is applicable to the facts of the instant case. And for the same reasons which we shall presently state, we do not think *Schwab* v. *Doyle*, 258 U. S. 529; *Nichols* v. *Coolidge*, 274 U. S. 531; and *Coolidge* v. *Long*, 282 U. S. 582 (also relied upon by petitioners) are applicable. The *Untermeyer* v. *Anderson* case held that the Revenue Act of 1924, which was approved June 2, 1924, undertook to tax all gifts *inter vivos* made during the calendar year 1924 and that, in so far as the act sought to tax gifts made prior to the effective date thereof, it was invalid because in conflict with the due process clause of the constitution.

We think it is sufficient to say, in answer to petitioners' contention that *Untermeyer* v. *Anderson*, *supra*, rules our decision in the instant case, that we have here no attempt to make a retroactive application of a statute. The transaction upon which the Commissioner seeks to impose the deficiencies, to wit, the receipt by the petitioners of all the assets of the American Venture Corporation and National Exploration Company in liquidation and complete cancellation of their stock in said corporations, occurred on July 16, 1929, more than a year after the enactment of the Revenue Act of 1928, by which the taxes proposed to be assessed were laid. Unquestionably the transaction when it occurred was taxable under the Revenue Act of 1928. It takes no retroactive application of the statute to hold that. The only question is the basis for gain or loss which is to be applied and section 113 (a) (9) of that act says that

the apportionment of cost shall be determined under regulations prescribed by the Commissioner with the approval of the Secretary.

Must the regulations of the Commissioner apply only from the date of their promulgation and affect only transactions which take place thereafter, or may they apply to other transactions for the same taxable year which have already gone before? Holmes Federal Taxation, 6th ed., at page 14, has this to say about the subject now under discussion:

RETROACTIVE EFFECT OF RULINGS. Treasury Department decisions promulgating rulings of the internal revenue bureau become effective upon the date of approval unless otherwise stated therein. Cases previously adjusted on the basis of principles of law contrary to those pronounced in such decisions, are subject to readjustment in accordance with the decisions. Generally speaking, any ruling or regulation made by the department supersedes all prior rulings and regulations and is *retroactive to the time the law was enacted*, since a ruling or regulation is usually merely an interpretation of the meaning of the law, and in theory the meaning has been the same from the beginning. The department recognizes, however, that in some instances it would be unjust or impracticable to reopen returns, adjustments or assessments which have been made in accordance with previous rulings, and where such rulings are superseded, an express limitation is sometimes made in the superseding ruling or regulation as to the retroactive effect thereof. The 1921 and 1924 laws expressly permit amending regulations to be applied in certain cases without retroactive effect. [Italics supplied.]

And Klein, in his work on Federal Income Taxation, at page 95, paragraph 5:17, says:

PAR. 5:17—*Retroactive Regulations.* Prior to the enactment of the 1926 Act doubt existed as to the effect of Treasury decision on prior conflicting rulings of the Department. Where such a change in Departmental interpretation was occasioned by a binding court decision the Treasury's adoption of the court's decision was more or less perfunctory and the change had necessarily to be retroactive in its effect. Where, however, a ruling was changed by the Department on its own initiative, the Treasury's practice with respect to the application of such a later ruling to an earlier issue was by no means consistent. A question arose as to the authority of the Commissioner arbitrarily to decide whether or not later rulings were to be retroactively applied, with the result that the 1926 Act expressly provided that the Commissioner had wide discretion in the premises, subject to the Secretary's approval: Section 1108(a) of the 1926 Act reads:

" In case a regulation or Treasury decision relating to the internal-revenue laws, made by the Commissioner or the Secretary, or by the Commissioner with the approval of the Secretary, is reversed by a subsequent regulation or Treasury decision, and such reversal is not immediately occasioned or required by a decision of a court of competent jurisdiction, such subsequent regulation or Treasury decision may, in the discretion of the Commissioner, with the approval of the Secretary, be applied without retroactive effect."

The 1928 Act went a step further by giving the Treasury discretion as to the retroactive applicability of the later ruling, even if the change was occasioned by a court decision: Section 605 reads:

"In case a regulation or Treasury decision relating to the internal-revenue laws is amended by a subsequent regulation or Treasury decision, made by the Secretary or by the Commissioner with the approval of the Secretary, such subsequent regulation or Treasury decision may, with the approval of the Secretary, be applied without retroactive effect."

When all is said and done, it seems to us that the principal question we have to decide in this proceeding is whether amended article 600, promulgated November 13, 1929, is a fair and reasonable interpretation of the law as passed by Congress and within the power of the Commissioner to make. Cf. *Edward Stephen Harkness*, 21 B. T. A. 1068.

Congress did not make any law setting out the method by which the cost of stock acquired in a reorganization like the one we have before us should be apportioned. It left those details to be determined by the regulations of the Commissioner, approved by the Secretary. The upshot of article 600 as amended, in so far as it is applicable to the facts of the instant case, is to provide that, where taxpayers receive stocks in distribution which are *not of the corporation making the distribution*, the method of apportionment shall be to apportion the cost of the original stock among the several stocks now owned in proportion to the fair market value of each at the time the distribution is made. The principle involved in this method of apportionment has received the approval of the Board and the courts. *Glen H. Curtiss*, 21 B. T. A. 629; affd., 57 Fed. (2d) 847; *Alexander D. Falck*, 26 B. T. A. 1359.

While the circumstances affecting the apportionment of costs in *Glen H. Curtiss* and *Alexander D. Falck*, supra, were not identical with the circumstances affecting the apportionment in the instant case, still the method underlying the apportionment is the same, to wit, the apportioning of the cost of the original stock among the several stocks now owned upon the basis of the fair market value of each at the time of distribution. That method, it seems to us, is fair and reasonable, and we doubt if any other method would be fair and reasonable.

We find no error in the Commissioner's determination of the deficiencies. Cf. *Evelyn F. Gregory*, 27 B. T. A. 223.

The claim of some of the petitioners that there has been an overpayment of their tax for 1929 is based altogether on the assumption that their contention on the main point will be sustained. Having ruled against petitioners on the main point, it naturally follows that we hold against petitioners on their claim of overpayment.

Reviewed by the Board.

*Decision will be entered for the respondent.*

VAN FOSSAN dissents.

MURDOCK, concurring: I agree with the result reached by the Board in this case, but I do not agree with some of the statements and conclusions expressed in the prevailing opinion. Section 113 (a) (9) of the Revenue Act of 1928 provides that the basis shall be apportioned between the stock in respect of which the distribution was made and the stock or securities distributed. The act itself does not go into detail in regard to the manner of apportioning the basis, but provides that it shall be under rules and regulations prescribed by the Commissioner with the approval of the Secretary. This called for some reasonable regulation. Following the enactment of this statute, Regulations 74 were promulgated, containing article 600. It was susceptible of the interpretation that where the stock distributed in reorganization was in part stock in a corporation other than the distributing corporation, the basis should be apportioned in proportion to the respective values of each class of stock at the time of the distribution. Stock of one corporation is materially different from that of another, both as to its character and preference. Therefore, the Commissioner correctly applied subdivision (2) of the article. It seems to me that the interpretation which the petitioners would place upon the article would make it an unreasonable regulation. Such an interpretation should be avoided in favor of a reasonable one. Thus, I would never get to the question which is discussed and decided in the prevailing opinion.

TRAMMELL, dissenting: I am unable to agree with the conclusion reached by the Board in this case. The Commissioner was given express authority by section 113 (a) (1) to promulgate regulations apportioning costs among several classes of stock. His promulgation of article 600 of Regulations 74 was pursuant to the statutory authority. The statute provides as follows:

(9) TAX-FREE DISTRIBUTIONS. If the property consists of stock or securities distributed after December 31, 1923, to a taxpayer in connection with a transaction described in section 112 (g), the basis in the case of the stock in respect of which the distribution was made shall be apportioned, under rules and regulations prescribed by the Commissioner with the approval of the Secretary, between such stock and the stock or securities distributed.

The statute left certain details to be filled in by regulations of the Commissioner; when those details are filled in by the regulations they become a part of the statute, unless contrary to law or unless purely arbitrary and without reason.

This means that section 113 (a) (1) is to be read in connection with article 600 of Regulations 74, promulgated pursuant thereto. To some extent at least this was a delegation of legislative authority to the Commissioner and the regulation becomes a part of the legislation. It is in no sense a regulation of the Commissioner inter-

preting the statute, but completes and fills out details left vacant. If the Commissioner interprets the statute by his regulations, it may be conceded that he may change his interpretation by a subsequent regulation, but in my opinion a different rule should be followed when the regulation is in effect to be read as a part of the statute specifically authorized and considered by Congress to be a material part thereof. It is not shown that article 600 of Regulations 74 as originally promulgated was invalid, contrary to the statute, or in any sense illegal. On the other hand, the prevailing opinion assumes the validity of the original regulation. At least it does not question it. This being true, the question here is whether the regulation, after once having been incorporated by the statute as a part of the law, can be changed retroactively to affect transactions which took place before the change. While Congress itself may impose an income tax retroactively, the question is, Can the Commissioner in effect change the law, by changing his regulation after it had become a part of the law? If so, it means that the Commissioner can change the law after a transaction occurred, which was not taxable at the time entered into. In my opinion Congress has not given such power to the Commissioner. When the Commissioner filled in the details of the law by his regulations as provided by the statute, he exercised his full power. Congress has not given authority to the Commissioner in effect to change or impose tax liability retroactively when Congress itself expressed no intention with respect to a retroactive application. When the Commissioner promulgated the original regulation, if valid, the details of the law had been completely filled in and the law was then complete. If the Commissioner, by regulation, changes the effect of such a law, it is new legislation, in my opinion not contemplated. It is conceded, however, that the Commissioner has the right to change the regulation prospectively. Even in legislation enacted by Congress, it must clearly appear that it was the intention to give it a retroactive effect. To give a retroactive effect to a regulation which is incorporated into the statute it seems to me would be similar to the principle announced by the Supreme Court in the cases of *Untermyer* v. *Anderson*, 276 U. S. 440; *Blodgett* v. *Holden*, 275 U. S. 142; and *Arizona Grocery Co.* v. *Atchison T. & S. F. Ry. Co.*, 284 U. S. 370. If the original regulation had been contrary to law or so unreasonable or arbitrary that it should not be recognized as a valid regulation, a different situation would arise.

I do not agree with the concurring opinion that the Commissioner correctly applied subdivision (2) of article 600 and that the original regulation is capable of the interpretation expressed in the amended regulation. In my opinion stock of the same character or preference

refers to the kind or character of stock and not whether it is in one corporation or another. It is true that stock of one corporation is materially different from that of another, but it is not necessarily materially different in *character* or *preference*. Section 112 (g) and article 576 refer to the surrender of stock or securities in a corporation a party to a reorganization and the receipt of stock or securities in such corporation or another corporation, a party to the reorganization. The statute clearly contemplated an exchange of stock in one corporation for stock in another.

ARUNDELL agrees with this dissent.

MORRIS did not participate in the consideration of or decision in this proceeding.