RUDOLPH BOEHRINGER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49891. Promulgated September 6, 1933.

*Wilbur H. Friedman, Esq.*, for the petitioner.
*Dean P. Kimball, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $2,248.01 in the petitioner's income tax for 1928. In determining the deficiency the Commissioner included $20,000 in income as dividends received in the reorganization of the American Zeolite Corporation and explained this adjustment as follows:

In accordance with section 112 (c) (1) of the Revenue Act of 1928 and Article 575, Regulations 74, the income from reorganization is computed as follows:

| | |
|---|---|
| Cash received | $20, 000. 00 |
| Stock received having value of | 50, 116. 62 |
| Total | $70, 116. 62 |
| Cost of original investment | 20, 000. 00 |
| Taxable income | $50, 116. 62 |

In accordance with example 2 of Article 574, Regulations 74, the profit is limited to the cash received and such profit should be taxed as dividend since the earned distributed surplus of the old company was more than sufficient to cover the cash distributions made in connection with this reorganization.

The petitioner assigns as error this action of the Commissioner.

The petitioner is an individual residing at Paterson, New Jersey. He was an officer, director and stockholder of the American Zeolite Corporation, a New York corporation engaged in the business of manufacturing under its patents a chemical for softening water. He held 2,000 shares, 40 percent of the stock of that corporation. There was only one other stockholder. The stock was all common stock. These shares had cost him $20,000. He had owned them for more than two years.

A competitor had started some patent infringement litigation against customers of the American Zeolite Corporation of New York (hereafter referred to for convenience as New York) which had reached the Circuit Court of Appeals for the Second Circuit. The officers decided to organize a corporation in New Jersey to which the business would be transferred in order that suits against it for patent infringement would arise in the Third Circuit, where they thought they might have a better chance of success. The American Zeolite Corporation (hereafter referred to as New Jersey) was organized under the laws of New Jersey. On August 23, 1928, New York sold " all of its assets except the sum of $50,000 allocated to capital, subject to all of its liabilities " to New Jersey for all of the stock of the latter, being 1,000 shares of no par common. The net worth of the property transferred as shown by the corporate books was $125,291.56. The 1,000 shares of New Jersey stock were distributed pro rata to the stockholders of New York, the petitioner receiving 400

shares. The directors of New York, at the same meeting at which they authorized the foregoing acts, also directed the proper officers to take the necessary steps to dissolve their corporation. It was dissolved on or about August 28, 1928.

New York had retained $50,000 in cash. Its earnings accumulated since February 28, 1913, were in excess of $50,000 on August 23, 1928. Thereafter it did no business. The stockholders, including the petitioner, retained their stock certificates until some time in October 1928. The directors of New York, acting as trustees in liquidation, met on October 1, 1928, and ordered the $50,000 to be distributed to the stockholders upon surrender of their stock certificates. The petitioner surrendered his certificates and received $20,000 as his share of the fund at some time in October 1928.

The Commissioner contends that there was a reorganization and a distribution in pursuance of the plan thereof which comes under the provisions of section 112 (c) (2) of the Revenue Act of 1928. We do not think that the provision referred to has any application to this case. Section 112 (c) (2) is limited to certain cases coming within the scope of (c) (1). Section 112 (c) (1) deals only with exchanges which would be within the provisions of subsection (b) (1), (2), (3), or (5) if it were not for the fact that the property received in exchange consists not only of property permitted to be received without the recognition of gain, but also of other property or money. The petitioner received no money from New Jersey. But, what is more important, this case would not be within the provisions of (b) (1), (2), (3) or (5). Subdivisions (1), (2) and (5) need no discussion. Subdivision (3) is as follows:

STOCK FOR STOCK ON REORGANIZATION.—No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization.

Since neither stock nor securities in New York were exchanged by this petitioner this provision is clearly inapplicable. Consequently (c) is likewise inapplicable. The Commissioner has evidently jumped to (c) without looking for any suitable provision of (b) on which he could rest. His argument therefore starts without statutory foundation and leads nowhere.

There was a reorganization, since there was a transfer by New York of a part of its assets to New Jersey and immediately thereafter New York or its stockholders were in control of New Jersey. Section 112 (i) (1) (B). The petitioner received his New Jersey stock tax-free. Section 112 (g) exactly covers this case. This is probably a further indication that (b) and (c) do not apply.

The respondent argues in his brief that even if section 112 (c) (2) does not apply the distribution was taxable as a dividend under section 115 (g). We think otherwise. The distribution in question was in complete liquidation of the New York corporation. Cf. section 115 (c). Section 115 (g) was intended to prevent tax avoidance. *Pearl B. Brown, Executrix*, 26 B.T.A. 901; *Annie Watts Hill*, 27 B.T.A. 73; affd., 66 Fed. (2d) 45. When section 115 is considered as a whole it seems clear that (g) was not intended to apply to a situation to which the more burdensome provisions of (c) apply. Cf. article 629, Regulations 74. If there is any doubt about the intention it is cleared away by reference to the legislative history of this provision. Section 115 (g) is an exact copy of section 201 (g) of the Revenue Act of 1926. There is a statement in the report of the Senate Finance Committee and in the report of the Conference Committee of the House that subdivision (g) of section 201 " obviously does not apply in cases of complete liquidation of all of the stock of the corporation." Sen. Rept. 52, 69th Cong., 1st sess., p. 15; House Rept. 356, 69th Cong., 1st sess., p. 30.

This brings us to another question—what part of the basis (cost) of the New York stock attaches to the old and what part to the new stock. Section 113 (a) (9). Following our decision in *Bertha G. Bamberger*, 27 B.T.A. 785, we hold that the basis should be apportioned between the old and new stock in accordance with article 600 (2) of Regulations 74, as amended.

*Decision will be entered under Rule 50.*