MANHATTAN GENERAL EQUIPMENT COMPANY ET ALI[1], PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 51345–51361, 51363–51370, 51372–51380.
Promulgated November 23, 1933.

*Laurence Graves, Esq.*, and *A. M. Kracke, Esq.*, for the petitioners.
*W. Frank Gibbs, Esq.*, for the respondent.

### OPINION.

MURDOCK: The taxes in controversy are income taxes for the years 1925 and 1926. The proceedings have been consolidated. The parties

[1] Proceedings of the following petitioners are consolidated and decided herewith: Southern Advertising Agency, Inc.; Neighborhood Stores Display Service, Inc.; Artemas Ward, Inc.; Luna Amusement Co.; Harum Scarum Amusement Corporation; The Stearn Advertising Company; Motor Coach Advertising Service, Inc.; Philadelphia Advertising Company; Bluff City Paint Company (formerly DeSoto Paint Manufacturing Company); Parker, Griesar & Savel, Inc.; Inland Advertising Agency; Western Advertising Company; Collier Advertising Service, Inc. (formerly Artemas Ward, Inc.); Barron G. Collier, Inc., of Texas; Iroquois Advertising Co.; Helter Skelter Slide Corporation; Chicago Elevated Advertising Company; The Tabard Press; Empire State Advertising Company; Oceanview Realty Operating Company, Inc.; The Stearn Advertising Company of New York; Barron G. Collier, Inc.; A. H. Armstrong Company; Mark D. Batchelder Company; Collier Service Corporation (formerly Broadway Subway Advertising Co., Inc.); Alexander, Ramsey & Kerr, Inc.; Middle States Publicity Company, Inc.; American Ammone Company; Pacific Railways Advertising Company; Street Railways Advertising Company; Manhattan Mercantile Corporation; United Stores Land & Improvement Company; Island Investment Company.

filed a stipulation of facts in which the affiliated status of the various petitioners and other pertinent facts are shown. There was no testimony or other evidence except a copy of a notice of deficiency.

The only issue, in so far as the year 1925 is concerned, is whether or not the basis for gain or loss to Artemas Ward, Inc., a corporation of New York, upon the cancellation of a certain contract, should be reduced by deductions for depreciation or exhaustion of the contract allowable to Artemas Ward, an individual, during the period of his ownership of the contract. The contract in question was between the Interborough Rapid Transit Co., a corporation engaged in business in New York City, and Artemas Ward, an individual, whereby the former granted to the latter exclusive advertising, vending, and news-selling privileges in the cars and stations of the Transit Co. and its affiliated companies. The contract provided that it should continue until December 31, 1928. It was acquired by Artemas Ward prior to March 1, 1913, and the parties have stipulated that its fair market value on March 1, 1913, was $3,028,096.42.

Artemas Ward, Inc., one of the petitioners herein, was organized under the laws of the State of New York on or about December 30, 1921. On March 13, 1922, Artemas Ward transferred the contract in question to this corporation in exchange for all of its stock. The Transit Commission of the State of New York terminated the contract on November 1, 1925. The parties agree that the transaction whereby Artemas Ward transferred the contract to Artemas Ward, Inc., was one in which no gain or loss was recognized (section 202 (c) of the Revenue Act of 1921), and, therefore, the basis for gain or loss to the corporation on this contract, under the applicable provisions of the Revenue Act of 1926, is the same as the basis would be if the contract had remained in the hands of Artemas Ward. See section 204 of the Revenue Act of 1926. They also agree that this basis is the fair market value of the contract on March 1, 1913, to wit, $3,028,096.42. Furthermore, there is no difference between the parties as to the amount of the deductions allowable under the various revenue acts to Artemas Ward, the individual, and to Artemas Ward, Inc.

The Commissioner has actually allowed deductions on account of the exhaustion of this contract in excess of the amount allowable. The petitioners concede that total deductions on account of the exhaustion of this contract, equal to the fair market value of the contract on March 1, 1913, have been properly allowed for periods prior to January 1, 1925. This rather unusual situation, where the entire basis has been deducted prior to the actual exhaustion of the contract, is explained by the fact that for a part of the year 1922, and for all of the year 1923, deductions were allowed to the corporation

based upon the cost of the contract to the corporation, as provided by the Revenue Act of 1921. The corporation issued its stock for the contract. The value of the stock was the same as the value of the contract. At that time the contract was apparently much more valuable than it was on March 1, 1913, and for each of those two periods the deduction allowed and allowable far exceeded the annual deduction allowed for other years under the other revenue acts which provided that the basis for depreciation was the March 1, 1913, value.

The corporation claims that it sustained a deductible loss in 1925 on account of the termination of the contract, and it now contends that this loss is measured by the difference between the March 1, 1913, value of the contract and $1,730,578.36, the deductions for exhaustion of the contract allowable to Artemas Ward, Inc. The Commissioner has allowed no loss. He contends that the basis of the March 1, 1913, value should be reduced, not only by the deductions for exhaustion of the contract allowance to Artemas Ward, Inc., but also by the deductions for exhaustion of the contract allowable to Artemas Ward, the individual. Thus reduced, the basis disappears and there is nothing left to be deducted as a loss. This is the sole difference between the parties which we are asked to consider for the year 1925.

Congress has permitted deductions to be taken for losses under certain circumstances. But one claiming such a deduction must have sustained a loss, (Cf. *United States* v. *Flannery*, 268 U.S. 98), and must be able to point to some specific provision allowing the deduction. The Revenue Act of 1926, which is applicable to the calendar year 1925, provides in section 202 that the loss shall be the excess of the basis over the amount realized after the basis has been " diminished by the amount of the deductions for exhaustion, wear and tear, obsolescence, amortization, and depletion which have since the acquisition of the property been allowable in respect of such property under this Act or prior income tax laws * * *." Section 202 (b) (2). The contract in question was apparently canceled without any recourse on the part of the corporation. The petitioners argue that the words " since the acquisition of the property " mean since the acquisition of the property by the one claiming the loss. Thus they would not diminish the basis by the deductions for exhaustion which were allowable in respect of the property during the time that it was owned by Artemas Ward. The respondent contends that the diminution of the basis is not so limited. The case of *Barnett Anchor Oil Co.*, 25 B.T.A. 746, relied upon by the petitioners, is not in point. There may be room for argument that this particular provision of the statute is not entirely clear, but we think that the

intention of Congress is clear when the various provisions of the statute relating to this subject are considered together.

Normally, under the income tax acts gain or loss from an exchange of property for stock is recognized, the property in the hands of the new owner has a new basis for gain or loss, and deductions for exhaustion of the property are computed upon that same basis. The new basis is cost to the new owner. The present question would not arise were it not for exceptions to these general rules. Congress made an exception where an owner of property transferred it to a corporation for stock of that corporation and immediately after the transfer controlled the corporation. It said that under such circumstances no gain or loss to the transferor would be recognized. But it did not stop there. It made other special provisions so that neither the Government nor the taxpayers would be hurt as a result of the nonrecognition of gain or loss. These provisions in effect put the transferee in the transferor's place for tax purposes in so far as that particular property was concerned. Congress provided that the old basis for gain or loss on the property should persist and apply to the property in the hands of the new owner. It also provided, in acts after the 1921 Act, that depreciation should be computed upon this same basis. The relationship between the old owner and the new was close and it was because of that fact that no gain or loss was recognized upon the transfer. The provisions protected both the Government and the taxpayers. The combination of transferor and transferee was to have neither greater nor less tax benefit from the exhaustion in use or from the disposition of the property than the return through tax free income of the transferor's basis. If the petitioners' contention were correct, the Government would be the loser in every case through a duplication of deductions on the same asset. There would be no point in using the March 1, 1913, value as the basis for gain or loss and reducing it by less than the entire amount recovered through deductions for depreciation since March 1, 1913.

The Supreme Court of the United States has said that "the amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost." *United States* v. *Ludey,* 274 U.S. 295. The whole purpose of the deductions for depreciation and of the offset against the amount realized upon disposition of an asset, is to provide, from untaxed income, an amount equal to the basis. Where the basis has once been recovered through such annual deductions, there is no portion of the basis left with which to offset the amount realized

from the disposition of the property. If anything is recovered from the disposition of the property or from the use of the property over and above the basis, that amount is income. Likewise, where there has been a full recovery through annual deductions for exhaustion, there can be no loss thereafter if the property is taken away from the owner or its usefulness is otherwise terminated. The above statements are certainly true when applied to property continuously owned by the same taxpayer. *Graves, Cox & Co.*, 27 B.T.A. 546; *Elliott-Granite Linen Corp.*, 26 B.T.A. 936; *Proximity Mfg. Co.*, 18 B.T.A. 691, 698, 699; *Gardner Printing Co.*, 4 B.T.A. 37; *Even Realty Co.*, 1 B.T.A. 355. In our opinion Congress intended to provide and did provide in the Revenue Act of 1926, where an asset is transferred by an individual to a corporation for the stock of the latter, and no gain or loss is recognized, that the two combined are entitled to offset against income the total basis of the transferor and no more. Any further allowance would result in a duplication of deductions for the same capital asset, and any less would not permit the taxpayer to recover the full basis tax free. The petitioners are not entitled to any deduction for 1925 representing loss upon the cancellation of this contract, for there was no loss based upon March 1, 1913, value. Cf. *United States* v. *Flannery, supra.*

The only issue touching the year 1926 relates to the method of computation of gain to the United Brokerage Co. upon the sale by it of the capital stock of Artemas Ward, Inc., a New York corporation. On June 30, 1925, the United Brokerage Co., of the affiliated group which is before us, acquired all of the outstanding capital stock of Artemas Ward, Inc., consisting of 4,964 shares of no par value common stock, at a cost of $3,414,345.63. On December 31, 1925, Artemas Ward, Inc., pursuant to a plan of reorganization, transferred all of its assets, except cash and accounts receivable aggregating $284,967.21, subject to all of its liabilities, to another corporation of the same name, organized under the laws of the State of Delaware, in exchange for all of the latter's stock, consisting of 100 shares of no par value common. The net value of the assets of the New York corporation on December 31, 1925, was $1,246,920.07. On the same day, but after the transfer, the New York corporation, pursuant to the plan of reorganization, distributed the 100 shares of stock in the Delaware corporation and accounts receivable aggregating $234,967.21 to its sole stockholder, the United Brokerage Co., without the surrender by the latter of its stock in the New York corporation. After this transfer, the New York corporation had no liabilities and its only asset was $50,000 in cash. In December 1926, the United Brokerage Co. sold all of the stock of Artemas Ward, Inc., the New York corporation, 4,964 shares, to an

outside party for a total consideration of $49,640. The United Brokerage Co. filed a consolidated return for 1926 in which it claimed a deduction of $3,062,314.54 as a loss resulting from the sale of the stock of the New York corporation. In computing this loss it apportioned the original cost of the stock of the New York corporation between 4,964 shares of the stock of the New York corporation and 100 shares of the stock of the Delaware corporation in proportion to the number of shares of each which it held. It thus allocated to the 100 shares of stock of the Delaware corporation $67,423.88 as a basis for gain or loss and it allocated to the 4,964 shares of the stock of the New York corporation $3,346,921.75 as a basis for gain or loss. It then reduced the basis attributable to the shares of the New York corporation by $234,967.21, representing the value of accounts receivable of that corporation distributed to the United Brokerage Co. in December 1925. The Commissioner, in determining the deficiencies for 1926, has allowed a loss of $495,696.76, which he computed in accordance with Treasury Decision 4274, which was promulgated on November 13, 1929, to amend article 1599 of Regulations 69. C.B. VIII-2, p. 240. The difference between his method of computation and that used by the taxpayer is that the respondent divided the original cost of the 4,964 shares of stock in the New York corporation between that stock and the stock of the Delaware corporation in proportion to the value of each stock at the date of reorganization and distribution, December 31, 1925. In this way he determined that the basis for gain or loss on the 4,964 shares of stock of the New York corporation was $780,303.97. He reduced this basis by $234,967.21, the value of the accounts receivable distributed to the United Brokerage Co., and then subtracted the total sale price of the shares, to wit, $49,640, which gave a loss on the sale of $495,696.76.

Although this case arises under an earlier revenue act and an earlier regulation is relied upon by the petitioners than was the case in *Bertha G. Bamberger*, 27 B.T.A. 785, nevertheless the question here is the same as that decided by the Board in the *Bamberger* case. The petitioners apparently contend that the loss as computed on the consolidated return was in accordance with paragraph 1 of article 1599 of Regulations 69 as originally promulgated. It is to be regretted that such a regulation was published and allowed to stand for so many years, but, if the petitioners' contention is correct, the case demonstrates the unreasonableness of that regulation. All of the assets of the New York corporation were taken from it with the exception of $50,000 in cash, so that the 4,964 shares were backed by nothing more than $50,000 in cash. The 100 shares of Delaware corporation stock were backed by practically all of the remaining

assets which had formerly belonged to the New York corporation. The net value of these assets was almost a million dollars, yet, under the petitioners' method, $3,111,954.54 of the original basis would be attributed to the New York stock and only $67,423.88 of the basis would be allocated to the Delaware stock. Following our decision in the *Bamberger* case, we hold for the respondent on this point.

*Decision will be entered under Rule 50.*